**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christy Lynn Bell, | No. CV-22-01816-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Christy Lynn Bell's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Docs. 22, 25, 30), and the Court now rules.

**I.   BACKGROUND**

The issues presented in this appeal are:

1. Whether the Administrative Law Judge ("ALJ") failed to give clear and convincing evidence to reject Plaintiff's symptom testimony.
2. Whether the ALJ properly assessed medical opinion evidence from multiple sources.
3. Whether the ALJ erred in assessing Plaintiff's residual functioning capacity ("RFC") without considering certain alleged restrictions and limitations.
4. Whether the ALJ erred in relying on the vocational expert's testimony in determining whether Plaintiff could make a successful transition to other work.

(Doc. 22 at 11).

### A. Factual Overview

Plaintiff was forty-four years old on her alleged disability onset date of April 3, 2014. (AR 268). She had completed high school and reported past work as a lab assistant and phlebotomist. (Doc. 22 at 2). On February 28, 2017, Plaintiff filed her application for disability insurance benefits under Title II of the Social Security Act ("the Act"). (*Id.*) Plaintiff alleged she suffered from the combined effects of a number of physical and mental impairments, including liver cirrhosis, bipolar disorder, depression, back pain, diabetes, foot pain, ankle pain, respiratory impairments, and an enlarged heart. (*Id.*) She had a date-last-insured under the Act of December 31, 2015. (*Id.*) At the reconsideration level, Plaintiff was approved for supplemental security income ("SSI") and found disabled as of August 24, 2017, but for purposes of her Title II claim ("DIB"), she had to prove disability on or before her date last insured. (Doc. 27 at 2). Therefore, in order to be entitled to DIB, Plaintiff had the burden of proving that she became disabled between April 3, 2014, and December 31, 2015. (*Id.*)

The SSA denied Plaintiff's DIB application initially and on reconsideration. (*Id.*) Plaintiff requested a hearing before an ALJ, which was held via telephone on August 25, 2021. (Doc. 13-1 at 29). The ALJ issued a partially favorable decision on September 2, 2021, affirming Plaintiff's SSI disability finding as August 24, 2017, but denying Plaintiff's DIB claim. (*Id.* at 47). The SSA Appeals Council denied Plaintiff's request for review and adopted that decision as the SSA's final decision. (Doc. 27 at 2). Plaintiff then sought review in this Court. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.

*Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," e.g., doing "significant physical or mental activities;" and (2) "gainful," e.g., usually done "for pay or profit." 20 C.F.R. § 416.972(a)(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the

physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C.     The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of April 3, 2014 through her date last insured of December 31, 2015." (Doc. 13-1 at 32).

At step two, the ALJ determined the following impairments were "severe": multilevel degenerative disc disease (DDD), Haglund's deformity, left Achilles' tendonitis with debridement and osteotomy, cirrhosis of the liver, obesity, depressive disorder, anxiety disorder, and alcohol abuse. (*Id.*) The ALJ found that Plaintiff's severe impairments "significantly limited the ability to perform basic work activities." (*Id.*) The ALJ also determined that Plaintiff had non-severe impairments of thrombocytopenia associated with alcohol use and diabetes mellitus. (*Id.*) The ALJ found these impairments non-severe because Plaintiff claims to be sober and her "diabetes appeared to be controlled when she was compliant with her medication." (*Id.* at 32–33).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 33). The ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a)
> except she was able to stand and walk for intervals of 30 minutes for a total of at least four hours per day and sit for intervals of 30 minutes for at least

>six to eight hours per day. She could [perform] work that required occasional climbing, balancing, and stooping; but no kneeling or crawling. She needed to avoid work on ladders, ropes, or scaffolds, and uneven terrain. She may have had a need to use a cane on an occasional basis for ambulation. She needed to avoid concentrated exposure to hazards. From a mental standpoint, she was limited to simple routine tasks.

(*Id.* at 36).

At step four, the ALJ determined that Plaintiff was not capable of performing past work as a phlebotomist because it is a light, semi-skilled job that would be above Plaintiff's RFC of sedentary work. (*Id.* at 45).

At step five, the ALJ determined that Plaintiff could have made a successful adjustment to other work. (*Id.* at 45). In making this determination, the ALJ consulted a vocational expert ("VE") because Plaintiff's "ability to perform all or substantially all of the requirements of [sedentary] work was impeded by additional limitations." (*Id.*) The VE testified that given all the factors of Plaintiff's age, education, work experience, and RFC, she would be able to perform the requirements of representative unskilled sedentary work occupations such as an inspector, sorter, or assembler. (*Id.* at 46). Accordingly, the ALJ found Plaintiff has not been under a disability—as defined in the Social Security Act— prior to August 24, 2017, and was also not under a disability at any time from April 3, 2014, through December 31, 2015, the date last insured. (*Id.*)

## II.   LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.  DISCUSSION

Plaintiff raises four claims of error in the ALJ's decision: (1) the ALJ did not properly consider Plaintiff's symptom testimony; (2) the ALJ did not properly consider the opinions of Dr. Samyukthas, Dr. Reynolds, S. Gregory, and Nurse Practitioner ("N.P.") Pupillo; (3) the ALJ did not adequately explain the omission of particular alleged restrictions in the RFC determination; and (4) the ALJ erred in relying on the VE's testimony because the jobs listed by the VE don't have as many job available as those cited by the VE. (Doc. 22).

### A.  Plaintiff's Symptom Testimony

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*,

947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain her credibility evaluation. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996)); *Lingenfelter*, 504 F.3d at 1036. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

In assessing credibility, the ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (citation omitted). If the ALJ relies on these factors, and her reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

### i. Physical Symptoms

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony about her physical symptoms. (Doc. 22 at 11). Plaintiff asserts that the ALJ provided "boilerplate" language in rejecting Plaintiff's testimony and that the ALJ's focus on Plaintiff's improved symptoms after her heel surgery and back injections did not constitute as clear and convincing reasons to reject Plaintiff's symptom testimony. (*Id.*)

Regarding Plaintiff's physical symptoms, the ALJ first found that Plaintiff presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged and did not find that Plaintiff was malingering. (Doc. 13-1 at 37). Because the ALJ did not find that Plaintiff was

malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting her symptom testimony. Regarding Plaintiff's physical symptoms, the ALJ opined:

> In terms of the claimant's alleged physical impairments, there is minimal objective medical evidence to support the claimant's complaints prior to December 31, 2015. The claimant did undergo previous surgeries for her Achilles' tendonitis including debridement and osteotomy, which certainly suggests that her symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects improvement in her symptoms subsequent to these surgeries. She had improvement in her liver function with treatment. Radiological lumbar findings are mild, and she also had improvement in her back pain with injections. While it is understood she would be somewhat limited in physical functioning, there is no indication that she would not have been able to perform sedentary work with limitations as noted in the above residual functional capacity.

(Doc. 31-1 at 39–40).

As for the improvement in Plaintiff's heel symptoms, Plaintiff points to her November 2014 emergency room visit for heel pain as evidence that proved she didn't have improvement in her symptoms. (Doc. 22 at 13). However, at that emergency room visit, Plaintiff reported having recently twisted her ankle. (Doc 13-1 at 38). Two months later, as pointed out by the ALJ, Plaintiff returned for re-evaluation of her foot and reported improved symptoms, a well-healed incision, and good range of motion of the ankle. (*Id.*) However, in September 2015, Plaintiff was seen by orthopedics with bilateral foot pain and scar tissue in her ankle. (*Id.* at 39). Although there is evidence of both improvement and recurring pain in the record, it is not this Court's role to second-guess the ALJ's determination of Plaintiff's credibility and the degree to which her improvement impacted her RFC. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). Because there was substantial evidence of improvement in the record, this was a specific, clear, and convincing reason to partially discredit Plaintiff's symptom testimony.

Similarly, the ALJ examined the history of Plaintiff's back pain and observed that once Plaintiff received injections, she reported improved symptoms. (Doc. 13-1 at 39). Six

1  months later, Plaintiff had a normal physical exam and normal gait. (*Id.*) Like Plaintiff's
2  heel, the improvement in Plaintiff's back pain with injections constituted a clear,
3  convincing and specific reason that was supported by substantial evidence. Thus, the Court
4  finds that the ALJ grounded her partial discrediting of Plaintiff's physical symptom
5  testimony with clear, convincing, and specific reasons supported by substantial evidence.

### ii. Mental Symptoms

Similar to her physical symptoms, Plaintiff also argues the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony about her mental symptoms. (Doc. 22 at 15). Plaintiff asserts that the ALJ's reasoning for rejecting Plaintiff's symptom testimony was insufficient. (*Id.* at 15–16). Regarding Plaintiff's mental symptoms, the ALJ first found that Plaintiff presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged and did not find that Plaintiff was malingering. (Doc. 13-1 at 37). In assessing her mental symptoms, the ALJ opined:

> In terms of the claimant's mental impairments, it should be noted that the claimant was not entirely compliant in taking medications as prescribed. While she did have a couple of inpatient hospitalizations, her symptoms improved when she started taking her medications as prescribed and during periods of alleged sobriety. . . . Although the claimant received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment was generally successful in controlling those symptoms. There is evidence that the claimant was not entirely complaint in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application.

(*Id.* at 41).

Plaintiff cites two Ninth Circuit cases that she asserts supports the notion that her failure to comply with prescribed medication and treatment is insufficient evidence to discount her subjective symptom testimony. (Doc. 22 at 15). However, both quotes from those cases concern the analysis of a treating doctor's opinions about a claimant rather than a claimant's own symptom testimony. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

1996); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Moreover, in *Nguyen* the claimant sought mental health treatment "late in the game" rather than not complying with the medications and recommendations of the mental health provider. 100 F.3d at 1465. These cases are distinguishable. The ALJ rejected Plaintiff's symptom testimony in part due to her not following a prescribed course of treatment despite it improving her symptoms. This is a permissible reason to reject Plaintiff's testimony under *Ghanim*. 763 F.3d at 1163. The ALJ cited substantial evidence of improvement in Plaintiff's symptoms when she complied with the prescribed course of treatment, a clear and convincing reason to reject Plaintiff's symptom testimony. (*See* Doc. 13-1 at 40–41 (noting that January, July, and September 2015 mental status examinations revealed normal findings, such as euthymic mood, good concentration, and fair insight and judgment)). Accordingly, the Court finds that the ALJ grounded her partial discrediting of Plaintiff's mental symptom testimony with clear, convincing, and specific reasons supported by substantial evidence.

As an aside, Plaintiff takes issue with the way in which the ALJ addressed Plaintiff's daily activities. (*See* Doc. 22 at 18). However, the ALJ rejected Plaintiff's subjective symptom testimony on other permissible grounds and thus, even if the ALJ erred by rejecting Plaintiff's testimony about her daily activities in an overly broad manner, any error is harmless.

**B.    Medical Opinions**

Next, Plaintiff argues that the ALJ did not properly weigh four different medical source opinions.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs

generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### i. Dr. Samyukthas

In December 2019, Dr. Samyukthas completed a checkbox form stating that Plaintiff was able to lift and carry less than ten pounds, sit for two hours, and stand or walk

for less than two hours in a workday. (AR at 2747–48). She opined that these conditions were in existence on or before December 31, 2015, and declined to provide an explanation or further detail beyond a general indication that these limitations resulted from objective, clinical, or diagnostical findings. (*Id.*)

The ALJ gave little weight to the opinions of Dr. Samyukthas because "they are inconsistent with physical exam and radiologic findings noting improvement in the claimant's symptoms noting improvement in the claimant's symptoms with surgery and injections. (Exhibits 2F, 6F, 7F, 9F, 28F)." (Doc. 13-1 at 43). As previously discussed, the record supported the ALJ's finding that Plaintiff's symptoms improved with surgery and injections. Dr. Samyukthas did not provide any explanation for her conclusions. The ALJ cited a number of different exhibits that supports her conclusion that Dr. Samyukthas' 2019 opinion conflicts with the objective medical evidence and evidence of Plaintiff's improvement as a result of surgery and injections. These exhibits were discussed in detail earlier in the ALJ's decision and showed normal gait, full strength, and improved pain in Plaintiff's ankle. *See Lewis v. Apfel*, 236 F.3d 503, 513–14 (9th Cir. 2001) (finding that the ALJ "discussed and evaluated the evidence," and was not required to do so under any particular heading). The ALJ did not state whether Dr. Samyukthas' opinions were contradicted, but regardless, the ALJ gave clear and convincing reasons supported by substantial evidence for giving the opinions little weight.

### ii. Dr. Reynolds and S. Gregory

In December 2017, Dr. Reynolds completed a checkbox form stating that Plaintiff was unable to work, and she could not lift or carry more than ten pounds and could not stand or sit for more than two hours. (AR 1939–40). Unlike Dr. Samyuthkas, Dr. Reynolds did not indicate that she conditions were in existence on or before December 31, 2015. (*Id.*) Plaintiff argues that the ALJ erred in not assigning a weight to the opinion, and *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), stands for the premise that the ALJ must analyze a post-date-last-insured opinion and explain whether or not it relates back to the date last insured. (Doc. 22 at 23).

The Court does not agree with Plaintiff's interpretations of *Bowen*. Although the *Bowen* court said that medical opinions subsequent to the last date of eligibility may be relevant evidence in determining the existence of an underlying disability, it did not state that they would be relevant in all cases or that an ALJ must give an explanation of whether the opinions relate back to the date of last insured. 849 F.2d at 1225–26. Regardless, the ALJ *did* explain that the opinions of Dr. Reynolds were related to the SSI claim rather than Plaintiff's DIB claim because they show a significantly worsened condition than in 2015 and no indication of how, when, or which impairments worsened during the relevant time period for the DIB claim. This is sufficient explanation to reject the opinions of Dr. Reynolds because they are not relevant to the underlying DIB claim. Further, Plaintiff claims that the ALJ did not assign weight to Dr. Reynolds' opinions, but the ALJ states "none of these opinions are given any weight" with a sufficiently specific reference to Dr. Reynolds opinions, among others. (*See* Doc. 13-1 at 36).

Similarly, in November 2019, S. Gregory completed a checkbox form stating that Plaintiff had moderate to moderately severe mental health limitations. (AR at 2743–44). The ALJ rejected S. Gregory's opinions for the same reasons as Dr. Reynolds—"they were provided subsequent to the claimant's date last insured with no indication of when these restrictions started or what evidence supported an earlier restriction." (Doc. 13-1 at 36). The same analysis above applies to S. Gregory's opinion, although an opinion like this might potentially be relevant under *Bowen*, it does not indicate any information about the relevant time period being examined in this appeal. The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to reject the opinions of both Dr. Reynolds and S. Gregory.

### iii. N.P. Pupillo

Finally, Plaintiff asserts that the ALJ rejected N.P. Pupillo's opinions with conclusory language insufficient to withstand the substantial evidence standard. (Doc. 22 at 24). N.P. Pupillo is Plaintiff's current therapist, and she gave an opinion of Plaintiff's mental impairment that ranged from moderately severe to severe. (AR at 2642). N.P.

Pupillo stated that these restrictions would have dated back to 2015. (*Id.*) Plaintiff ignores the ALJ's reasoning that "[o]ther mental health evidence received shows, that while the claimant did have severe mental impairments, they improved when the claimant was compliant with medication, and the claimant herself notes improvement in her symptoms and advised that she was feeling 'much better' (Exhibits 2F, 12F, 24F)." (Doc. 13-1 at 43). Although the ALJ used the fact that N.P. Pupillo had not seen Plaintiff in 2015 as part of the reason she gave the opinions little weight, the ALJ also pointed out other inconsistencies that led to her conclusion. The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to reject the opinions of N.P. Pupillo.

### C. Omitted Restrictions

Plaintiff next argues that the ALJ erred by not including a need for leg elevation and off-task limitations in the RFC. (Doc. 22 at 24–25). However, Plaintiff failed to prove that these were needed limitations. The ALJ found Dr. Lorber to be the most persuasive of the medical opinion evidence and he did not testify Plaintiff needed to elevate her legs, or that Plaintiff would not be off task when changing positions from sitting to standing or walking. (AR at 80–84). The ALJ properly rejected medical opinions that conflicted with the RFC found and concluded that there was not sufficient evidence in the record requiring Plaintiff to regularly elevate her legs to include that restriction in the RFC. It is not the duty of this Court to second-guess the ALJ's determinations of credibility. *See Andrews*, 53 F.3d at 1039. The ALJ is not required to include restrictions that Plaintiff has failed to prove. *See Batson*, 359 F.3d at 1197 (finding no error when ALJ did not incorporate claimant's properly rejected statements and testimony). The ALJ's RFC finding was supported by substantial evidence.

### D. VE Testimony

Finally, Plaintiff claims that "the ALJ did not sufficiently consider the erosion of job numbers given the highly restrictive residual functional capacity finding posed to the [VE]." (Doc. 22 at 25). Defendant argues that Plaintiff has waived this issue because she failed to raise it in the initial ALJ hearing and only raised it for the first time on appeal

before the SSA Appeals Council without any of the accompanying data she now presents to this Court. (Doc. 27 at 19). Both parties cite *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017), to support their respective positions.

In *Shaibi*, the court made clear how a claimant could preserve their challenge to a VE's job numbers. "It is enough to raise the job-numbers issue in a general sense before the ALJ. A claimant may do so by inquiring as to the evidentiary basis for a VE's estimated job numbers, or inquiring as to whether those numbers are consistent with . . . other sources listed in 20 C.F.R. § 404.1566(d)." *Shaibi*, 883 F.3d at 1110.

Plaintiff cites another Ninth Circuit Court of Appeals case, *White v. Kijakazi*, 44 F.4th 828, 835 (9th Cir. 2022), as support for her argument that solely bringing the challenge to the SSA Appeals Council and failing to raise the argument to the ALJ is permissible and the challenge is preserved. (Doc. 30 at 12). However, *White* is distinguishable. In that case, the plaintiff gave supporting data to the SSA Appeals Council in their challenge to the VE's job numbers. *White*, 44 F.4th at 832. Here, Plaintiff only gave a cursory objection to the VE's job numbers that included no alternative data or additional evidence for SSA to consider. (*See* AR at 8–9).

A linchpin of the court's holding in *White* was the fact that the plaintiff submitted alternative job numbers to the SSA Appeals Council, while the case was still in administrative proceedings. *See White*, 44 F.4th at 832 (reasoning "[u]nder SSA regulations, a claimant has a right to submit additional evidence to the Appeals Council, which the agency may choose to make part of the administrative record where it finds that certain conditions are met" and concluding that the Appeals Council had adopted the differing job numbers evidence when it stated White's additional evidence was "part of the record."). Plaintiff has not done the same here. The job numbers Plaintiff has presented are not part of the administrative record, and this Court is not inclined to extend the holding of *White*. The Court holds that Plaintiff has waived her objection to the VE's job numbers.

**IV.  CONCLUSION**

For the foregoing reasons,

- 15 -

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 8th day of January, 2024.

*James A. Teilborg*
Senior United States District Judge